UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:07CV-143-M

JOSEPH THOMAS                                                    PLAINTIFF

VS.

MECHANICAL CONSULTANTS, INC.                          DEFENDANT

MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion by Defendant, Mechanical Consultants, Inc., for summary judgment on Plaintiff's claim of discrimination under the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq*., and Kentucky Civil Rights Act, KRS § 344.010, and retaliation under federal law and KRS 344.280 [DN 22]. Fully briefed, this matter is ripe for decision. For the reasons set forth below, the motion by Defendant for summary judgment is DENIED.

## I.  FACTS

Plaintiff, Joseph Thomas, was employed by Defendant, Mechanical Consultants, as a general laborer in January of 2007. Thomas has been employed by Mechanical Consultants on three occasions: August 2000 to December 2001("the First Stint"); December 2006 to January 2007 ("the Second Stint"); and May 2008 to the present ("the Third Stint"). Mechanical Consultants is a commercial, mechanical, and plumbing subcontractor doing business in Kentucky and Southern Indiana. For its work force, Mechanical Consultants utilizes both skilled tradesmen labor and general labor. Mechanical Consultants is owned by Mark Sanders ("Sanders") and Sanders is the president of the company. Sanders manages the construction operations and makes all employment-related decisions for Mechanical Consultants, including hirings, lay-offs, recalls, and job

assignments.

In August of 2006, while laid off from Mechanical Consultants between his first and second stints of employment with the company, Thomas was diagnosed with tuberculosis. Thomas was quarantined to his home as a precautionary measure for two months. During this time, Thomas was prescribed antibiotics and monitored. In early December of 2006, Thomas's physicians cleared him to return to work without any restrictions. At that time, Thomas exhibited no outward signs of tuberculosis. Thomas continued to see a physician about once a month for blood work and x-rays.

Mechanical Consultants recalled Thomas and other general laborers in December of 2006 to help it complete renovation work at the Swedish Match facility. At the time of his recall, Thomas did not inform Mechanical Consultants of his recent diagnosis of tuberculosis or notice of any work restrictions related to his diagnosis. Likewise, Thomas did not exhibit any external signs of tuberculosis at any time during his second stint of employment at Mechanical Consultants. After two weeks, Thomas was reassigned to a renovation project at the Regional Medical Center in Madisonville, Kentucky. During this period of time, Thomas worked for Mechanical Consultants in the plumbing trade, for example installing supply and return lines, under a licensed plumber.

Thomas testified that on Monday, January 15, 2007, he told Larry Rager, the foreman on the Regional Medical Center project, that he would be out on Thursday, January 18, 2007, because he had a doctor's appointment for his tuberculosis. (Thomas Deposition at 97, 99.) Thomas testified that he reminded Rager again on Wednesday of his doctor's appointment. At that time, Rager asked Thomas "why?" and Thomas informed him that he had tuberculosis. (Id. at 96-97, 100.) Rager testified that he recalled the conversation with Thomas regarding the doctor's appointment, but denied that Thomas told him that it was related to his tuberculosis. (Rager Deposition at 32-33.)

2

When Thomas returned from his doctor's appointment on Friday, January 19, 2007, Thomas was laid off subject-to-recall.  Rager testified that five to six employees were removed from the Regional Medical Center project on that day due to the decrease in work at the project.  Of those removed, Thomas was the only employee laid off and not reassigned to different projects.  On Tuesday, January 23, 2007, Thomas was recalled temporarily to assist on the Todd County Jail project for three days while the foreman's helper was absent due to a medical reason.  At the Todd County Jail project, Thomas worked with only Donnie Nelson, a licensed plumber.  On Thursday, January 25, 2007, Thomas was informed that he was being laid off again.  He requested to finish out the week.  On Friday, January 26, 2007, Sanders reassigned Thomas to the Browning Springs School project for the day where he worked in isolation.  Thomas testified that he called both Sanders and Shawn Rickard, Project Manager for Mechanical Consultants, to protest the lay-off and was informed that the "last person hired on is the first one to be laid off" and to look for another job.

On February 20, 2007, Thomas filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") claiming that he was laid off in violation of the ADA.  In May of 2008, Mechanical Consultants recalled Thomas.

## II. STANDARD OF REVIEW

To grant a motion for summary judgment, the Court must find that the pleadings, together with the depositions, interrogatories and affidavits, establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Once the moving party satisfies this burden, the

non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Co., 475 U.S. 574, 586 (1986). The rule requires the non-moving party to present "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

### III. DISCUSSION

Defendant argues that Plaintiff's claims of disability discrimination under the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. § 12101, *et seq.*, and Kentucky Civil Rights Act ("KCRA"), KRS § 344.010, and retaliation under federal law and KRS 344.280 should be dismissed because Thomas has failed to state a prima facie case for either cause of action. In addition, Defendant contends that even if Plaintiff has stated a prima facie case for either of these claims, summary judgment is proper because Mechanical Consultants has offered legitimate reasons for Thomas's lay-off, reassignment, and delay in recall and he has failed to show that those reasons are pretexts for unlawful discrimination. The Court considers these arguments in turn.

### A. Disability Discrimination

#### 1. Prima Facie Case

Defendant first argues that Plaintiff has failed to make out a prima facie case of discrimination under the ADA or the KCRA. Claims for disability discrimination under the KCRA

4

are analyzed under the standards developed under the ADA.  Bryson v. Regis Corp., 498 F.3d 561, 574 (6th Cir. 2007). The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  Where, as here, a plaintiff offers only indirect evidence of discrimination, he may establish a prima facie case under the ADA by showing: (1) he is disabled; (2) he was otherwise qualified for the position with or without reasonable accommodation; (3) his employer knew or had reason to know of his disability; (4) he suffered an adverse employment action; and (5) following the adverse employment action, the position remained opened while the employer sought other applicants or the disabled individual was replaced.  Macy v. Hopkins County Sch. Bd. of Educ., 484 F.3d 357, 365 (6th Cir. 2007); Timm v. Wright State Univ., 375 F.3d 418, 423 (6th Cir. 2004). The fifth element "may also be satisfied by showing that similarly situated non-protected employees were treated more favorably." Talley v. Bravo Pitino Restaurant, Ltd., 61 F.3d 1241, 1246 (6th Cir. 1995); Jones v. Potter, 488 F.3d 397, 405 (6th Cir. 2007).   See also Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 350 (6th Cir. 1998)(Where the employer eliminates an employee's position pursuant to a reduction in force or reorganization, the fifth element can be satisfied "where he or she demonstrates that a 'comparable non-protected person was treated better.'").[1]

---

[1]While not characterized as such by Defendant, it would appear from a review of the evidence that essentially Defendant claims that Thomas was laid-off as part of a reduction in force ("RIF"). See  Schram v. Schwan's Sales Enterprises, Inc., 124 Fed. Appx. 380, 384 (6th Cir. 2005) ("A work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company.") (quoting Barnes v. GenCorp Inc., 896 F.2d 1457, 1465 (6th Cir. 1990)).

If a plaintiff satisfies this requirement, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action.  <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973); <u>Martin v. Toledo Cardiology Consultants, Inc.</u>, 548 F.3d 405, 401-11 (6th Cir. 2008); <u>Daugherty v. Sajar Plastics, Inc.</u>, 544 F.3d 696, 703 (6th Cir. 2008).  If the defendant articulates such a reason, the burden then shifts back to the plaintiff to show by a preponderance of the evidence that the proffered reason is pretextual. <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 143 (2000).  This means that in order to withstand a motion for summary judgment a plaintiff must show that there is a triable issue of fact upon which a jury could reasonably find that more likely than not the employer's reason is a pretext for unlawful discrimination. <u>Manzer v. Diamond Shamrock Chems. Co.</u>, 29 F.3d 1078, 1083 (6th Cir. 1994).

### a. Knowledge of Disability

Defendant argues that Plaintiff has not satisfied his prima facie burden because he has not shown that Mechanical Consultants knew or had reason to know of his disability at the time of the January 2007 lay-offs.  Defendant argues that Thomas did not tell Sanders or Rickard about his tuberculosis prior to the fact-finding EEOC hearing in July of 2007. (Thomas Deposition at 45,60-68, 72, 70-80, 82-84, 122; Sanders Affidavit at ¶¶ 8, 17-20; Rickard Affidavit at ¶¶ 7-8.) Defendants maintain that both Donnie Nelson and Larry Rager, Thomas's supervisors, deny Thomas said anything about his tuberculosis to them.  While Phillip E. Hester ("Big Phillip") spoke with Thomas once about his tuberculosis before Thomas's second stint with the company, he along with Thomas's co-workers deny that they informed the company of Thomas having tuberculosis and testified that they never heard anyone at Mechanical Consultants talk about Thomas's tuberculosis at any time prior to the EEOC hearing in July of 2007.  (Rager Affidavit at ¶¶ 23-25; Big Phillip

6

Affidavit at ¶¶ 6, 21-23; Nelson Affidavit at ¶¶ 21,23-25; Little Phillip Affidavit ¶¶ 13-14, 23; Matt Patton Affidavit at ¶¶ 20-22; Rickard Affidavit at ¶ 6.)  Additionally, Defendant contends that all the facts before Mechanical Consultants in January of 2007 suggested that Thomas was healthy and not hampered by a disability.  Thomas did not provide Mechanical Consultants his medical records or mention his disability on his updated job application.  As a result, Defendant argues that the decision to lay-off Thomas was made without knowledge of his tuberculosis and, as such, was not the result of discrimination.

"[A] defendant cannot discrimination 'because of' a disability if it has no knowledge of the disability." Kocsis v. Multi-Care Management, Inc., 97 F.3d 876, 884 (6th Cir. 1996).  See also Landefeld v. Marion General Hosp., Inc., 994 F.2d 1178, 1181 (6th Cir. 1993); Summers v. Middleton & Reutlinger, P.S.C., 214 F. Supp. 2d 751, 755 (W.D. Ky. 2002).  While both Sanders and Rickard have testified that they were unaware of Thomas's condition, Thomas presented sufficient evidence from which a jury could determine that Mechanical Consultants knew or had reason to know of Thomas's tuberculosis.  Thomas testified that he informed three foreman at Mechanical Consultants that he had tuberculosis.  Thomas testified that he told Big Phillip at the Swedish Match job site.  Thomas also testified that he told Donnie Nelson on his ride over to the Todd County Jail project.  Significantly, Thomas testified that on two occasions he told Rager that he needed Thursday, January 18, 2007, off for a doctor's appointment.  Thomas testified that both times Rager asked him "why?" and that he responded that he suffered from tuberculosis. Significantly, Thomas presented evidence that he was laid off the day after he returned from his tuberculosis-related doctor's appointment; he was the only individual laid off at that time; that no other regular construction employee was laid off until late March; and during the additional four

days of work that he was provided, Thomas was left to work with one individual or in isolation at the job sites.  The proof of the close temporal proximity between his alleged disclosure to his foreman that he had tuberculosis and his lay-off and the varying reasons allegedly articulated by Sanders for the lay-off which are discussed below raise a genuine issue of material fact of whether Defendant knew of Thomas's tuberculosis prior to laying him off.

### b.  Adverse Employment Action

Defendant argues that Plaintiff has not satisfied his prima facie burden because he has not shown that he suffered an adverse employment action.  Defendant argues that Thomas's work reassignment to the Browning Springs Project was not detrimental to Thomas because it delayed Thomas's lay-off and added another day to Thomas's paycheck at a higher hourly rate.

Defendant mischaracterizes Plaintiff's claim.  Plaintiff repeatedly asserts that Defendant's decision to lay him off was motivated by his disability.  Plaintiff's discussion regarding Defendant's isolation of Plaintiff on the job site the Friday following the lay-off decision is a fact in support of the inference that Mechanical Consultants laid him off because of his tuberculosis, not a self-standing claim.  Clearly, the lay-off of an employee satisfies the requirement of an adverse employment decision.  Vincent v. Brewer Co., 514 F.3d 489, 495 (6th Cir. 2007).

### c.  Similarly Situated Individual

Defendant also argues that Plaintiff has not satisfied his prima facie burden because he has not shown that he was replaced, his position remained unfilled, or that a similarly situated, non-protected individual was treated more favorably.  Defendant maintains that the general laborer positions at the projects to which Plaintiff was assigned were eliminated and no openings for a general laborer existed at the other projects forcing the lay-off.  According to Defendant, Thomas

was not treated differently than other Mechanical Consultants' laborers.  Defendant submits that it laid off two non-disabled laborers -- Justin Durbin and Bruce Williams -- on January 1, 2007 just weeks before Thomas's lay-off.  Defendant claims that Thomas was the sixth of six laborers that Mechanical Consultants laid off from November 2006 through January 2007 as worked decreased.

Plaintiff responds that he has satisfied the similarly situated element because Mechanical Consultants laid him off and retained similarly situated laborers, such as Matt Patton and Phillip R. Hester ("Little Phillip").  To be deemed "similarly situated," the Sixth Circuit in Mitchell v. Toledo Hosp. stated that "the individuals with whom the plaintiff seeks to compare [his] treatment must have dealt with the same supervisor, have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."  Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992).  However, while the Sixth Circuit employs the factors set forth in Mitchell, the Sixth Circuit has cautioned that each factor does not apply in every case and that the standard for similarly situated employees should not be construed narrowly.  See Jackson v. FedEx Corporate Services, Inc., 518 F.3d 388, 396 (6th Cir. 2008).[2]  Instead, the "appropriate test" is to "look at those factors relevant to the factual context, as opposed to a requirement that a plaintiff demonstrate similarity in all respects."  Id. at 394.  See also Knox v. Neaton Auto Prods. Mfg., Inc., 375 F.3d 451, 458 (6th Cir. 2004)(The plaintiff "need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered 'similarly situated;' rather, this court has held that the plaintiff and the employee with whom the plaintiff seeks to compare

---

[2]In fact, the Sixth Circuit in Jackson indicated that the "Mitchell factors have been found to apply primarily to the disciplinary context . . . ."  518 F.3d at 396 n. 4.

9

himself or herself must be similar in 'all of the *relevant* aspects.'"); Ercegovich, 154 F.3d at 352.

Initially, Defendant seeks to compare the Plaintiff to all non-disabled laborers in the company while Plaintiff seeks to compare himself with Matt Patton and Little Phillip.  For purposes of the prima facie "similarly situated" inquiry, the Sixth Circuit instructs the Court to focus on "individuals with whom the *plaintiff* seeks to compare [his] treatment."  Mitchell, 964 F.2d at 583 (emphasis added).  To the extent Defendant argues that Plaintiff should be compared to the other five laborers laid off prior to Plaintiff's lay-off, such an argument is more appropriate to determining whether Mechanical Consultants' legitimate non-discriminatory reason for terminating Thomas was pretext for discrimination.  See Jackson, 518 F.3d at 396.

After a review of the evidence, the Court concludes that Matt Patton and Little Phillip are similarly situated to Thomas.  Both Matt Patton and Little Phillip were classified as general laborers and were hired at the same time or later than Thomas.  Specifically, Matt Patton was hired by Defendant on January 15, 2007, four weeks after Thomas was hired and four days before Thomas was laid off.  Patton was assigned to the Regional Medical Center project.  Patton did not list any specific plumbing experience on his application.  At the time of the lay-off, Patton was a laborer and the last employee hired by the company.  Patton was not laid off in January of 2007.  Likewise, Little Phillip was hired at the same time as Thomas in December of 2006.  In contrast to Little Phillip, Thomas had previously worked for Mechanical Consultants for seventeen months during his first stint of employment. Little Phillip was classified as a general laborer at the  Swedish Match project.  In January of 2007, Defendant assigned both Thomas and Little Phillip to the Regional Medical Center project.  At the time of Thomas's lay-off, Little Phillip was reassigned to the Lake Barkley Lodge project where he worked continuously until September of 2007.  Thus, the evidence

10

reflects that these individuals were classified as general laborers, indicated no specialized training or experience on their employment applications, and had been employed at Mechanical Consultants for the same or a shorter period of time than Thomas, establishing that they were similarly situated to Thomas.

Defendant disagrees arguing that Matt Patton and Little Phillip were not similarly situated to Thomas because they either had more experience than Thomas or had stronger laborer skills than Thomas making them more useful on more projects.  Defendant's discussion of the "relevant skills and qualifications" for the general laborer position and the qualification of Plaintiff in relation to those of his peers is more appropriate in the pretext analysis and not the prima facie case analysis. Jackson, 518 F.3d at 396; see also Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 574 (6th Cir. 2003)("[A] court may not consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the prima facie case.").

Additionally, Defendant argues that Little Phillip was not similarly situated to Thomas because Thomas and Little Phillip were on completely different projects at the time of the lay-off and they worked with different foreman.[3]  Equivalence of supervisors is not a requirement to satisfy the "similarly situated" element.  Gibson v. Shelly Co., 314 Fed Appx. 760, 770-771 (6th Cir. August 19, 2008)(noting that a mere "difference in supervisors ... does not make the employees dissimilarly situated");  Ellis v. Rexnord Industries, LLC, 2008 WL 5204076, *4 (E.D. Tenn. December 11, 2008)("the 'same supervisor' criterium has never been read as an inflexible

---

[3]The record does not completely support this assertion by Defendant.  Plaintiff has set forth evidence that both he and Little Phillip worked on the Swedish Match project and the Regional Medical Center project.  The parties agree that Little Phillip was reassigned to the Lake Barkley project.

requirement"); <u>Seay v. Tenn. Valley Auth.</u>, 339 F.3d 454, 479 (6th Cir.2003)(employees may be similarly situated even if they work for different supervisors); <u>Berry v. City of Poniac</u>, 269 Fed. Appx. 545, 550 (6th Cir. Mar. 14, 2008); <u>White v. Ford Motor Co.</u>, 2008 WL 4506260, *7 (N.D. Ohio September 30, 2008).  In the present case, the identity of the individual supervising Thomas is not a relevant aspect of his employment.  Sanders testified that at Mechanical Consultants employment-related decisions were not made by the employee's direct supervisor; rather the decisions were made by Sanders.  Thus, the fact that Thomas and Little Phillip worked in similar positions at the same company and were subject to Sanders's employment-related decisions regardless of the identity of the employee's direct supervisor suffices to establish the prima facie case.

Since the evidence demonstrates that the Defendant treated both Patton and Little Phillip more favorably than it treated Thomas by retaining these employees instead of Thomas, the Plaintiff has satisfied his prima facie case of discrimination.

## 2. Legitimate, Non-Discriminatory Reason

Defendant next argues that even if Plaintiff establishes a prima facie case of disability discrimination, Mechanical Consultants has offered legitimate reasons for Plaintiff's lay-off. According to Defendant, Thomas was rehired/recalled in December of 2006 to complete the Swedish Match project.  When Mechanical Consultants completed its project at Swedish Match, it reassigned Thomas to the Regional Medical Center project to complete demolition and eliminated his general laborer position at Swedish Match.  Similarly, when the demolition phase at the Regional Medical Center project ended, Mechanical Consultants laid off Thomas effective January 19, 2007, and eliminated his general laborer position at the project at that time.  Defendant represents that it had

no openings for a general laborer at its projects at that time.  Defendant contends that it recalled Thomas as a temporary laborer on January 23, 2007 to fill in for Robert Galloway at the Todd County Jail project during a week-long medical leave.  When Thomas's temporary assignment at the Todd County Jail project ended on January 25, 2007, Defendant assigned Plaintiff to complete a one-day grinding assignment at the Browning Springs project to enable him to finish out the week. Sanders testified that after Thomas completed the one-day assignment at Browning Springs, Mechanical Consultants laid off Thomas subject-to-recall because it had no general laborer vacancy at its other projects.

Additionally, Sanders testified that all employment-related decisions at the company are made by him based on labor demands at its projects and productivity.  According to Sanders, he reviews Mechanical Consultants' needs on a daily basis, and based on those reviews, identifies the most efficient make up of the work force for the company's ongoing projects.  Defendant asserts that the economic climate in 2007 forced Mechanical Consultants to scale back its work force. Defendant contends that Thomas was the sixth of six laborers Mechanical Consultants laid off between November 2006 to January 2007.  Defendant represents that it laid off two non-disabled laborers -- Justin Dubrin and Bruce Williams -- on January 1, 2007, just weeks before Thomas's lay-off.

The Court finds that Mechanical Consultants has offered legitimate, non-discriminatory explanations for Defendant's lay-off of Thomas, thus destroying "'the legally mandatory inference of discrimination arising from the plaintiff's initial evidence.'" Manzer, 29 F.3d at 1082 (quoting Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 255 n.10 (1981)).  Therefore, the burden shifts back to Plaintiff to prove that this explanation is a mere pretext for intentional

disability discrimination.

### 3. Pretext

Defendant argues that Plaintiff has failed to show that these reasons are pretexts "designed to mask" unlawful discrimination. <u>Imwalle v. Reliance Medical Products, Inc.</u>, 515 F.3d 531, 544 (6th Cir. 2008). To establish pretext, a plaintiff must show that the proffered reason (1) had no basis in fact; (2) did not actually motivate the adverse employment action; or (3) was insufficient to motivate that action. <u>Manzer</u>, 29 F.3d at 1084. The Court finds that Plaintiff has come forward with sufficient evidence that Defendant's legitimate, nondiscriminatory reason for laying off Thomas is a pretext.

First, the Court finds that the temporal proximity between the disclosure of Thomas's condition and the decision to lay him off gives rise to an inference that the reason proffered by the Defendant is a pretext. Although temporal proximity alone is insufficient to satisfy Thomas's burden at this stage of the inquiry, "suspicious timing is a strong indicator of pretext when accompanied by some other, independent evidence." <u>DeBoer v. Musashi Auto Parts, Inc.</u>, 124 Fed. Appx. 387, 393-94 (6th Cir. 2005); <u>Bell v. Prefix, Inc.</u>, 2009 WL 877699, *7 (6th Cir. April 2, 2009). Thomas was laid off the day he returned to work after his tuberculosis-related doctor's appointment and two days after he informed his foreman of the appointment. The temporal proximity between Thomas's disclosure and his lay-off, coupled with the additional evidence below, is sufficient to establish that the employer's reason for laying off Thomas was in fact pretextual.

Second, Mechanical Consultants' shifting reasons for Thomas's lay-off is evidence of pretext. "An employer's changing rationale for making an adverse employment decision can be evidence of pretext." <u>Thurman v. Yellow Freight Systems, Inc.</u>, 90 F.3d 1160, 1167 (6th Cir. 1996).

14

See also Clay v. United Parcel Service, Inc., 501 F.3d 695, 713 (6th Cir. 2007); Coburn v. Rockwell Automation, Inc., 238 Fed. Appx. 112, 122 (6th Cir. 2007) ("Inconsistency in an employer's explanation of the reasons for an adverse action 'raises an inference [of pretext] that must be drawn, at summary judgment, in favor of the nonmovant.'" (citation omitted)).   Thomas testified that Sanders and Rickard first told Thomas that he was being laid off because the "last one hired on is the first individual laid off." (Thomas Dep. at 60, 67.)  Thomas presented evidence that Matt Patton was in fact the last individual hired at Mechanical Consultants having been hired just four days prior to Thomas's lay-off.   Thomas testified that when confronted with this information, Sanders subsequently informed him in determining who is laid off "it depends on how much you're making and what you're doing."  (Thomas Dep. at 61, 67.)  At the EEOC, Sanders represented that the reason for Thomas's lay-off was that his low skill level limited his usefulness.  (Sanders March 12, 2007 Letter.)  However, Rager, the foreman on the Regional Medical Center project, testified that Thomas was not the lowest skilled employee he released from that project in January of 2007. Nevertheless, Thomas was the only general laborer laid off at that time as opposed to being reassigned. (Rager Deposition at 19, 25; Sanders Dep at 26.)  While Sanders and Rickard deny they made the "last in, first out" statement, Plaintiff has submitted sufficient evidence to create a genuine issue of fact concerning the reasons given by Mechanical Consultants for Thomas's lay-off.

Third, Thomas has set forth evidence that he was treated differently than similarly situated non-protected employees.  The Sixth Circuit has explained that "[a]bsent direct evidence of pretext, [a plaintiff] can survive summary judgment with 'circumstantial evidence in numerous forms, [including] discriminatory treatment when compared to similarly situated employees.'"  Ellis v. Buzzi Unicem USA, 293 Fed. Appx. 365, 372 (6th Cir. June 24, 2008).  See also Manzer, 29 F.3d

at 1084.  As discussed above, Thomas presented evidence that of the five to six general laborers removed from the Regional Medical Center project on January 19, 2007, he was the only laborer that was laid off, instead of reassigned.  Additionally, it is undisputed that both Matt Patton and Little Phillip were retained by Mechanical Consultants while Thomas was laid off.   The Court has previously addressed in detail Patton and Little Phillip's qualifications and job history with the company.

Defendant argues that neither Patton nor Little Phillip were similarly situated to Thomas. Defendant contends that Patton had more than twice as much plumbing experience as Thomas and other laborer skills such as concrete, carpentry, sheet metal, and backhoe work that Thomas did not have, thus making Patton more useful on more projects.  Defendant also argues that Patton was much closer to securing his plumbing license than Thomas at the time of the lay-off.  Patton secured his plumbing license in July of 2007.  Further, Defendant claims that Little Phillip and Thomas were on completely different projects at the time of the lay-off and worked for different foreman. Defendant also contends that Little Phillip caught on to assigned tasks quicker and had a stronger skill set than Thomas.

Viewing the evidence in the light most favorable to Plaintiff, the Court finds that the Plaintiff sufficiently created a genuine issue of material fact as to whether the reasons articulated by Defendant for the lay-off were pretexts for unlawful discrimination.  While it is undisputed that Mechanical Consultants laid off other general laborers in 2007, the ultimate question is whether it made the decision to lay off Thomas in January of 2007 based on a discriminatory motive.  A reasonable jury could discount Sander's testimony regarding his reason for the lay-off since the employment applications of Patton and Little Phillip do not reflect advanced skill level and the

testimony of Thomas's co-workers indicate that Thomas had more experience with the company than these two employees.  "Ultimately, whether a jury chooses to believe the [plaintiff or defendant's] version of events depends on the credibility of each party's witnesses, and credibility determinations are for the jury to decide."  Ercegovich, 154 F.3d at 354 (citing Wells v. New Cherokee Corp., 58 F.3d 233, 237 (6th Cir. 1995)).

Accordingly, the Court finds that there is sufficient evidence of pretext for summary judgment purposes on the disability discrimination claim.

### B. Retaliation

### 1.  Prima Facie Case

Defendant argues that Plaintiff's retaliation claim under both federal and state law must fail for lack of a prima facie case.  Claims for retaliation under KRS 344.280 are analyzed under the standards developed under federal law.  See Brooks v. Lexington-Fayette Urban Co. Housing Authority, 132 S.W.3d 790, 803 (Ky. 2004).  To make out a claim of retaliation, a plaintiff must show that: (1) he engaged in a protected activity; (2) this exercise of protected rights was known to the defendant; (3) the defendant thereafter took adverse employment action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action. Scott v. Metropolitan Health Corp., 234 Fed. Appx. 341, 346 (6th Cir. April 3, 2007); Morris v. Oldham County Fiscal Court, 201 F.3d 784, 792 (6th Cir. 2000).  If and when a plaintiff has established a prima facie case, the burden of production once again shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions.  McDonnell Douglas Corp., 411 U.S. at 802.  If the employer carries that burden, the plaintiff bears the burden of demonstrating that the employer's reason is pretextual.  Blair v. Henry Filters, Inc., 505 F.3d 517, 524 (6th Cir. 2007).

17

In this case, it is undisputed that Plaintiff engaged in a protected activity in pursuing a complaint with the EEOC; that the Defendant was aware of that protected activity; and that Plaintiff was not recalled from lay-off until May 2008 subsequent to the filing of his EEOC complaint. Defendant argues, however, that Plaintiff has offered no evidence of a causal connection between the protected EEOC activity and Defendant's decision not to recall Plaintiff until May 2008. Plaintiff, on the other hand, contends that he has established causation via evidence of other individuals who were treated more favorably.

To establish a causal connection, "a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not filed a discrimination action."  Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000). "Although no one factor is dispositive in establishing a causal connection, evidence that defendant treated the plaintiff differently from similarly situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation."  Giles v. University of Toledo, 286 Fed. Appx. 295, 304 (6th Cir. July 16, 2008)(citing Nguyen, 229 F.3d at 563).

Here, Plaintiff has raised an inference that the delay in the recall of Thomas until May of 2008 may have been retaliatory for the filing of his EEOC complaint.  Plaintiff contends that Defendant treated Thomas less favorably than his similarly situated non-protected peers because Mechanical Consultants hired Bobby Patton, a laborer, on April 16, 2007, instead of recalling Thomas.[4]  Additionally, Plaintiff identifies several general laborers who were recalled before him:

---

[4]Defendant argues that Bobby Patton was a part-time employee hired for purposes of working during the factory shut-down at AK Steel.

Keith Mincy, a general laborer laid off on 9/13/07 and recalled 4/7/08; Phillip R. Hestor ("Little Phillip"), a general laborer, laid off on 9/13/07 and recalled 4/14/08; Eli Wilson, a laborer, was laid off on 9/7/07 and recalled 1/16/08; Jeremy Riley, a laborer, worked sporadically between April and August 2007; and Robert Galloway, a laborer, laid off in August of 2007 and recalled in September of 2007. Accordingly, the Court finds that Plaintiff has stated a prima facie case of retaliation.

### 2. Legitimate, Non-Discriminatory Reason

Defendant next argues that even if Plaintiff establishes a prima facie case of retaliation, Mechanical Consultants has offered legitimate reasons for Plaintiff's May 2008 recall. Mechanical Consultants represents that it's labor demands -- not Thomas's discrimination charge -- was the reason for Thomas's lengthy lay-off for most of 2007. According to Mechanical Consultants, it kept Thomas on lay-off subject-to-recall until May 2008 because the company had experienced a decrease in workload in 2007, it had no new commercial construction general laborer positions open from January 26, 2007 through Spring of 2008, and when the general laborer work at its commercial construction projects became available, it recalled Thomas to work. Mechanical Consultants further argues that Thomas was one of ten laborers Mechanical Consultants recalled in 2008, ultimately being part of a four person laborer recall in May of 2008. Additionally, Mechanical Consultants represents that it recalled three other laborers after Thomas's recall.

The Court finds that Mechanical Consultants has offered legitimate, non-discriminatory explanations for Defendant's recall of Thomas. Therefore, the burden shifts back to Plaintiff to prove that this explanation is a mere pretext for retaliation.

### 3. Pretext

While a much closer question than the disability discrimination claim, the Court finds that

19

Plaintiff has raised a genuine issue of material fact regarding whether the proffered reason by Mechanical Consulting for the delay in the recall of Thomas is pretextual and was instead motivated by retaliation for filing an EEOC complaint.  The Court finds that the same circumstances which established a causal connection between Thomas's protected activity and his delay in recall also serve as sufficient evidence to satisfy this test.  See Cantrell v. Nissan North America, Inc., 145 Fed Appx. 99, 107-108 (6th Cir. 2005)(The Sixth Circuit has held that evidence of a causal connection in a retaliation claim can also be used as sufficient evidence to find that an employer's proffered reason for the taking adverse action is pretextual. ).  As discussed above, Plaintiff presented evidence that other individuals classified as laborers who had not engaged in the protected activity were recalled prior to Thomas.  Specifically, the record reflects that Phillip R. Hester ("Little Phillip") was hired at the same time as Thomas, had less experience than Thomas, and was recalled before Thomas.  Plaintiff also presented evidence that Bobby Patton, a laborer with a similar skill set as Thomas, was hired a month after Mechanical Consultants learned of Thomas's EEOC charge. While Defendant has presented evidence in support of its assertion that it treated Thomas the same as other laborers subject-to-recall, the evidence when viewed in the light most favorable to Plaintiff creates a genuine issue of material fact on the issue of whether Defendant delayed in recalling Plaintiff in retaliation for Thomas filing an EEOC complaint.

## IV.  CONCLUSION

Because the Plaintiff has established a prima facie case of disability discrimination and retaliation, and because the true reasons for the adverse employment decisions present a question of fact, the Court holds that summary judgment is inappropriate. For the foregoing reasons, Defendant's motion for summary judgment [DN 22] is **DENIED**.

cc: counsel of record